*Exhibit A*

Filing # 119425166 E-Filed 01/11/2021 05:02:01 PM

IN THE CIRCUIT COURT FOR THE 15th JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

BG STRATEGIC ADVISORS,
LLC, a Florida limited liability
company,

      Plaintiff,

vs.

                                CASE NO.:

FREIGHTHUB, INC., a Delaware
Corporation,

      Defendant.

_____/

### SUMMONS

THE STATE OF FLORIDA:

TO All and Singular the Sheriffs of said State:

      **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint in

the above styled cause upon the Defendant:

By Serving:                FREIGHTHUB, INC.
                         Registered Agent:  Cogency Global, Inc.
                         850 New Burton Road
                         Suite 201
                         Dover, DE 19904

      Each Defendant is hereby required to serve written defenses to the Complaint on Plaintiff's

attorney, whose name and address is:

                         JORDAN A. SHAW, ESQ.
             ZEBERSKY PAYNE SHAW LEWENZ, LLP
                   110 S.E. 6th Street, Suite 2150
                   Fort Lauderdale, Florida 33301
                    Telephone: (954) 989-6333
                      jshaw@zpllp.com

within twenty (20) days after service of this Summons upon that Defendant, exclusive of the day or service,

and to file the original of said written defenses with the Clerk of said Court either before service on

Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against

that Defendant for the relief demanded in the Complaint or Petition.

[2065162/1]                             1

WITNESS my hand and seal of said Court ___Jan 14 2021___



JOSEPH ABRUZZO
As Clerk of said Court

By: *Blake Smith*

As Deputy Clerk
BLAKE SMITH

## AMERICANS WITH DISABILITIES ACT OF 1990

"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Tammy Anton, Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda.   Tenga la amabilidad de ponerse en contacto con Tammy Anton, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."

"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte Tammy Anton, kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."

Filing # 119425166 E-Filed 01/11/2021 05:02:01 PM

IN THE CIRCUIT COURT FOR THE 15th JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

BG STRATEGIC ADVISORS, LLC, a Florida
limited liability company,

                                                CASE NO.:

       Plaintiff,

vs.

FREIGHTHUB, INC., a Delaware corporation,

       Defendant.

_____/

## COMPLAINT

Plaintiff, BG Strategic Advisors, LLC (hereinafter "BGSA" or "Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, FreightHub, Inc. (hereinafter "Freighthub" or "Defendant"), and in support thereof states as follows:

### BRIEF INTRODUCTION

1. Plaintiff BGSA is a Florida based Merger and Acquisition advisory firm that specializes in providing strategy-led M&A advisory services for companies in the supply chain sector. Defendant Freighthub is a cross-border shipping company that sought the services of Plaintiff BGSA. This case stems from Defendant Freighthub's blatant breaches of a duly executed agreement between the parties.

### PARTIES, JURISDICTION, AND VENUE

2. This is an action for damages in excess of thirty thousand dollars ($30,000.00) exclusive of interest, attorneys' fees, and litigation costs.

3. Plaintiff BGSA is a Florida limited liability company conducting business in Palm Beach County, Florida, with its principal place of business located in Palm Beach County, Florida.

[2060153/2]                                                       1

NOT A CERTIFIED COPY

4. Defendant Freighthub is a Delaware corporation conducting business in Palm Beach County, Florida.

5. Venue is proper in this Court because the agreement at issue places venue in this circuit and payment under that agreement is due to Plaintiff BGSA in this circuit.

## GENERAL ALLEGATIONS

### A.  THE AGREEMENT

6. On December 11, 2017, Plaintiff BGSA and Defendant Freighthub entered into an Engagement Agreement (hereinafter "Agreement"). A copy of the Agreement is attached hereto as Exhibit "A"

7. Pursuant to the Agreement, BGSA was engaged to act as Freighthub's exclusive advisor in connection with one (1) or more business transactions.

8. Pursuant to the Agreement, BGSA is entitled to three (3) distinct compensation components:

(i) **A Retainer:** equal to eight percent (8%) of the fully-diluted equity of the Company's stock based on the total capitalization as of the date of the closing of the next "Transaction" as defined in the Agreement. The Retainer Fee was to take the form of a stock issuance "equal to 8% of the fully-diluted equity of [Freighthub's] stock, based on the total capitalization as of the date of the closing of the next Transaction."

(ii) **A Success Fee:** following the consummation of *any* Transactions, in amount equal to (a) 10% of the capital raised, loans or investments, payable through cash (7%) and fully-diluted equity (3%); or (b) 3% of the Company's total enterprise value for any sale, merger or change of control. This fee was payable if a Transaction

consummated during or within the twelve (12) months following the expiration of the Agreement, regardless of whether it was consummated with or without BGSA's help;

(iii) **Expense Reimbursement**: BGSA was entitled to reimbursement of its expenses; and

(iv) **Continued Engagement**: In addition, if the Company consummated a Transaction by December 11, 2018 (it did), Freighthub was to appoint BGSA as its ongoing advisor, and compensate BGSA under the same terms as dictated above.

**B.   FREIGHTHUB BREACHED THE AGREEMENT**

9.      In January of 2020, Defendant Freighthub issued eighty thousand (80,000) shares of stock to BGSA Holdings, LLC (BGSA's parent company) in compliance with Defendant Freighthub's obligations to BGSA under the Agreement, acknowledging both the validity of the Agreement and the consummation of a Transaction.  A copy of the letter and stock certificate is attached hereto as Exhibit "B."

10.     Unfortunately, however, Plaintiff BGSA believes, and therefore alleges that Defendant Freighthub's issuance of stock did not equate to eight percent (8%) of the fully diluted equity.

11.     In addition, Plaintiff BGSA believes, and therefore alleges that the eighty thousand (80,000) shares of stock were of a lower class than those issued in the Transaction that proved the issuance.

12.     However, despite Plaintiff BGSA's repeated requests, Defendant Freighthub has refused to provide any supporting documentation or data that the shares equated to eight percent (8%) of the fully-diluted equity of Freighthub's stock based on the total capitalization as of the

date of the closing of the next Transaction, which took place in November of 2018. In addition, Freighthub unilaterally decided to issue the stock as common stock, sitting underneath newly-issued preferred stock which would be entitled to a three hundred and fifty percent (350%) return before the common stock would be worth anything at all. This had the effect of destroying the value of the stock Freighthub had promised and owed to BGSA.

13.     Importantly, Plaintiff BGSA is entitled to this information based on the Agreement—to determine the sufficiency and compliance of the issuance.

14.     Despite acknowledging the validity of the Agreement and the consummation of at least two (2) prior Transactions, Defendant Freighthub failed to properly pay BGSA's Success Fees. This includes Success Fees for Transactions that consummated in or around November of 2018, October of 2020, and several more.

15.     Again, however, Defendant Freighthub did, on one (1) occasion, pay a Success Fee of sixteen thousand three hundred and sixty dollars ($16,360), acknowledging the validity of the Agreement and their responsibility for paying Success Fees. Nevertheless, Defendant Freighthub refuses to pay the remaining Success Fees due and owing.

16.     Moreover, Defendant Freighthub acknowledged the consummated Transactions that occurred during the Agreement's initial term (it issued stock based upon one of them), but unilaterally decided not to engage BGSA as a continuing advisor.

17.     Instead, Defendant Freighthub improperly decided that Plaintiff BGSA's involvement with the Company ended in November of 2018. Not so.

18.     Instead, this is, yet again, another breach of the Agreement. If not extended by the successful consummation of a Transaction (which it was in 2018), the Agreement would have expired on December 11, 2018, at the earliest.

19.     Because there was a consummated Transaction, the Agreement extended and, by the unambiguous terms of the Agreement, BGSA was to become Defendant Freighthub's ongoing advisor to be terminated for cause only.

20.     Defendant Freighthub had the right to terminate the Agreement, "but only for cause."

21.     "Cause" in the Agreement means:

(i)     an intentional act of fraud by BGSA; (ii) an intentional and continued breach of BGSA's material obligations under this agreement; (iii) BGSA failing to be a registered broker-dealer, or (iv) intentional and continued willful conduct by BGSA that is demonstrably and materially harmful to the Company. For purposes of this paragraph, an act, or a failure to act, shall not be deemed willful or intentional, as those terms are defined herein, unless it is done, or omitted to be done, in bad faith and without a reasonable belief that BGSA's actions were in the best interest of the company. Failure to meet objectives, by itself, does not constitute "Cause."

22.     However, no termination for cause existed.

23.     Indeed, if Defendant Freighthub believed BGSA committed an act justifying termination for Cause, it was contractually required to give BGSA written notice and an opportunity to cure. *See* Exhibit "A."

24.     No such notice was given, written or otherwise, and therefore no opportunity to cure was provided.

25.     In reality, Defendant Freighthub is simply doing everything it can to avoid paying Plaintiff BGSA its Success Fee for Transactions past and future.

26.     BGSA, for example, is entitled to a Success Fee equal to three percent (3%) of Freighthub's (or successor entity's) total enterprise value at the time of Freighthub's anticipated

merger next year—Freighthub has made very clear it will not pay any Success Fee to BGSA for this Transaction.

27.   Defendant Freighthub breached the Consulting Agreement.

28.   All conditions precedent to the filing of this action have been completed, waived, or otherwise satisfied.

<div align="center">

**COUNT I**
**BREACH OF AGREEMENT**

</div>

Plaintiff reaffirms, realleges, and incorporates by reference paragraphs 1 through 28 above, as if fully set forth herein.

29.   Plaintiff BGSA and the Defendant Freighthub entered into the Agreement. *See* Exhibit "A."

30.   All conditions precedent to Defendant Freighthub's performance of its obligations under the Agreement have been satisfied, including any actions or performances required by Plaintiff BGSA.

31.   Defendant Freighthub breached the Agreement by, without limitation, (i) failing to properly pay or account for the retainer fee; (ii) failing to pay the success fee and expressly indicating its refusal to pay future success fees; and (iii) failing to engage and/or refusing to acknowledge and compensate Plaintiff BGSA as its ongoing advisor.

32.   As a result of Defendant Freighthub's breaches, Plaintiff BGSA has suffered substantial damages.

**WHEREFORE,** Plaintiff, BG Strategic Advisors, LLC, requests that this Honorable Court enter judgment in its favor and against Defendant FreightHub, Inc., awarding Plaintiff damages,

reasonable attorneys' fees and litigation costs pursuant to the Agreement and applicable law; and such other and further relief as the Court deems proper.

<div align="center">

**COUNT II**
**ANTICIPATORY BREACH OF AGREEMENT**
(Anticipatory Repudiation)

</div>

Plaintiff reaffirms, realleges, and incorporates by reference paragraphs 1 through 28 above, as if fully set forth herein.

33.    Plaintiff BGSA and the Defendant Freighthub entered into the Agreement. *See* Exhibit "A."

34.    All conditions precedent to Defendant Freighthub's performance of its obligations under the Agreement have been satisfied, including any actions or performances required by Plaintiff BGSA.

35.    Defendant Freighthub anticipatorily breached the Agreement by, without limitation, expressly indicating its refusal to pay future success fees, specifically, for Freighthub's upcoming merger in 2021.

36.    As a result of Defendant Freighthub's breaches, Plaintiff BGSA has or will inevitably suffer substantial damages.

**WHEREFORE**, Plaintiff, BG Strategic Advisors, LLC, requests that this Honorable Court enter judgment in its favor and against Defendant FreightHub, Inc., awarding Plaintiff damages, reasonable attorneys' fees and litigation costs pursuant to the Agreement and applicable law; and such other and further relief as the Court deems proper.

[2060153/2]                                                                                               7

Respectfully submitted this 11th day of January 2021 by:

<div style="display:flex">

CONSUMER LAW ORGANIZATION, P.A.
721 U.S. Highway 1, Suite 201
North Palm Beach, FL 33408
Main: (561) 822-3446
Fax: (305) 574-0132
Email: dennis@cloorg.com


By: /s/ J. Dennis Card, Jr.
    J. DENNIS CARD JR., ESQ.
    Florida Bar No. 487473

ZEBERSKY PAYNE SHAW LEWENZ, LLP
110 SE 6th Street, Suite 2150
Fort Lauderdale, FL  33301
Telephone: (954) 989-6333
Facsimile:  (954) 989-7781
Primary Email:    jshaw@zpllp.com;
zludens@zpllp.com
Secondary Email: mperez@zpllp.com;
medmonson@zpllp.com


By: _____
    JORDAN A. SHAW, ESQ.
    Fla. Bar No. 111771
    ZACHARY D. LUDENS, ESQ.
    Fla. Bar No. 111620

</div>

[2060153/2]                                                                                          8



BG STRATEGIC
ADVISORS

Benjamin Gordon
Managing Partner
BG Strategic Advisors, LLC
525 South Flagler Drive, Suite 200
West Palm Beach, FL 33401

December 11, 2017

Ohad Axelrod
CEO
FreightHub, Inc.

Dear Ohad,

This engagement letter confirms the terms under which BG Strategic Advisors, LLC ("BGSA") will act as investor and exclusive advisor for FreightHub, Inc., a Delaware corporation (the "Company") in connection with one or more proposed "Transactions" (as defined below).

The parties agree that BGSA shall proceed with its efforts to find a Transaction or multiple Transactions acceptable to the Company and its shareholders. Said opportunity may involve a capital raise, strategic investment, acquisition, sale, merger, combination, reorganization, recapitalization or other business transaction with the Company, in which the Company sells, transfers or exchanges any or all of its assets, liabilities, or stock in any transaction whether for cash, securities or other consideration, as a single transaction or series of transactions, except as done in the ordinary course of business (collectively, a "Transaction").

In addition, BGSA or its affiliates or designees intends to invest in the Company (the "BGSA Investment").

**Proposed BG Strategic Advisors Role**

During the term of BGSA's engagement, BGSA will provide the Company with advice and assistance in connection with the Transaction which BGSA customarily provides for engagements of this type to assist the Company in its efforts to identify and execute Transactions. In particular, BGSA shall work with the Company's management to: (i) study the business and operations of the Company and provide feedback on the strategic and operational initiatives that will support the growth of the Company; (ii) identify prospective investors and/or targets for the Company who shall be subject to the prior written approval of the Company, such approval to be in the sole and absolute discretion of the Company (an "Approved Target"); (iii) coordinate the information flow, on-site visits and due diligence activities with Approved Targets; and (iv) any other services that are mutually agreed upon between the Company and BGSA or that are otherwise reasonable, customary and appropriate in undertakings of this nature.

**EXHIBIT A**

**Terms**

A.  In connection with this Engagement, the Company will pay to BGSA the following fees:

    1.  *Retainer*:  BGSA shall agree to work initially on a no-retainer basis. Instead, BGSA's principal, Benjamin Gordon and/or his designees, will receive stock equal to 8% of the fully-diluted equity of the Company's stock, based on the total capitalization as of the date of the closing of the next Transaction. 50% of this equity shall vest upon the closing of the next Transaction. The remaining 50% of this equity shall vest upon the sooner of (a) the Company receiving introductions to at least 10 c-level executives to strategic companies in the supply chain sector, or (b) the Company receiving one introduction to a strategic client that generates meaningful revenue for the Company. For clarity, "strategic companies" and "strategic clients" shall include the companies attached to this letter as Annex B   Gordon and BGSA will also play a role helping to build and grow the Company, including introductions to customers, strategic feedback, and other services as appropriate.

    2.  *Success Fee*: Upon consummation of any Transactions, the Company will pay BGSA a success fee equal to (a) 10% of capital raised for capital raises, loans, or investments, 7% of which shall be payable to BGSA by the Company in cash and the remaining 3% payable in fully-diluted equity of the Company's stock; or (b) 3% of the Company's Total enterprise value for sales, mergers, or changes of control.  For the sake of clarity, BGSA shall not be entitled to a success fee for (i) the BGSA Investment; or (ii) any funds received from any existing investor of the Company.

    3.  A Transaction shall be deemed consummated as of the date on which the Company delivers signed closing documents effecting a Transaction (the "Closing").  The Success Fees shall be due immediately at the Closing.

    4.  *Expense Reimbursement*: In addition to the fees that are payable to BGSA, the Company hereby agrees to reimburse BGSA promptly for reasonable travel and other reasonable out-of-pocket expenses incurred in connection with this Agreement, regardless of whether a Transaction has occurred. Any individual expense exceeding US$[$5,000] shall require the prior written approval of the Company.

B.  If no Transaction has occurred during the term of this Agreement, and if during the twelve (12) months following the expiration or termination of this Agreement, the Company consummates a Transaction, with or without the continued assistance of BGSA, then BGSA shall be entitled to receive the Success Fees specified above.

C.  The term of this Engagement will begin on the date of this letter and continue for twelve (12) months thereafter. In the event the Company consummates a Transaction during the term of this Engagement, then BGSA will be appointed as its ongoing advisor for the Company, on the same terms as in this letter including paragraphs A and B unless otherwise mutually agreed, for as long as BGSA, Cambridge Capital, or Gordon remains involved with the company. The Company shall have the right to terminate this Agreement, but only for cause.  "Cause" in this agreement means (i) an intentional act of fraud by BGSA; (ii) an intentional and continued breach of BGSA's material obligations under this agreement; (iii) BGSA failing to be a registered broker-dealer, or (iv) intentional and continued willful conduct by BGSA that is demonstrably and materially harmful to the Company.  For purposes of this paragraph, an act, or a failure to act, shall not be deemed willful or intentional, as those terms are defined herein, unless it is done, or omitted to be done, in bad faith and without a reasonable belief that BGSA's actions were in the best interest of the company. Failure to meet objectives, by itself, does not constitute "Cause." In the event the Company believes BGSA has committed actions that would justify termination for Cause, then it

shall give BGSA a written warning, and BGSA shall have the opportunity for a reasonable cure period (not to exceed 30 days) (the "Cure Period") in which it seeks to discontinue any actions that would justify termination for Cause. If BGSA succeeds in taking corrective action during this Cure Period, then the Company shall have no right to terminate BGSA for Cause. However, if BGSA fails to take corrective action during this Cure Period, then, and only then, the Company shall have the right to execute a Termination for Cause.

D.   The Company agrees that, because BGSA will be acting on the Company's behalf, the Company will indemnify BGSA and related persons according to the indemnification and contribution provisions in *Annex A* (the "Indemnity"), which the parties agree constitutes a material part of this Agreement.   The Company acknowledges that no expiration or termination of this engagement shall affect the Indemnity and the obligations of the Company thereunder except as otherwise set forth in Annex A.

E.   The Company agrees that, in performing the services contemplated by this Agreement, BGSA will be relying on information furnished by the Company, as well as information available from generally recognized public sources.  BGSA will not independently verify such information and will not make an independent evaluation of any assets or liabilities of parties involved.  The Company will cooperate fully with BGSA in connection with its analyses, and will provide information deemed reasonably necessary by BGSA.  The Company covenants that all such information provided by the Company, including all information included in the Transaction memorandum, will be materially complete, materially accurate and not misleading.  The Company will promptly notify BGSA if it learns of any material inaccuracy, any misleading statement or any material omission that would otherwise make any statement made by the Company materially misleading in any information previously delivered to BGSA.  BGSA shall maintain any information received by it from the Company in the strictest confidence and shall maintain such information with the same level as confidentiality as it maintains its own confidential information. BGSA shall not disclose any such information to any third party (except for its employees, directors and officers who have a need to know basis and are bound by confidentiality) without the prior written consent of the Company.

F.   The Company acknowledges that BGSA will provide advice, written or oral, exclusively for the information of the Company's Board of Directors and senior management, who will make all decisions regarding whether and how to pursue any Transaction. Accordingly, as an independent contractor, BGSA will not assume responsibilities of a fiduciary to the Company or its stockholders in connection with the performance of services. Furthermore, BGSA shall not make any agreements, representations or give any guarantees on behalf of the Company except as BGSA is explicitly authorized in writing to do so.

G.   Any advice or opinions provided by BGSA may not be disclosed, referred to publicly or provided to any third party except in accordance with BGSA's prior written consent.

H.   All notices hereunder shall be in writing or email and shall be delivered to the addresses set forth above.

I.   The Company acknowledges that the fees due to BGSA will not be reduced by any obligation the Company may owe to any other person or entity.

J.   In the event that BGSA must incur any legal expenses associated with enforcement or collection under this Agreement, the Company agrees to pay all of BGSA's reasonable legal expenses, within 30 days of receipt of an invoice.

K.   This Agreement shall be governed by, and construed in accordance with, the laws of Florida without giving effect to that state's principles of conflict of law.  In the event of a dispute between the Parties that is in any way related to their business relationship, including, but not limited, to disputes related to this

Engagement, the Parties agree that the exclusive venue for this dispute shall be the Circuit Court in Palm Beach County, Florida or the Federal Court of the southern district of Florida. The parties agree and consent to personal jurisdiction, service of process and venue in the Circuit Court in Palm Beach County, Florida or the Federal Court of the southern district of Florida for purposes of any action, suit, or proceeding arising out of or relating to this Agreement.

L. This agreement and all annexes or attachments hereto contain the entire agreement between the parties regarding the subject matter hereof and supersedes any prior understanding, written or oral. Any amendment hereto or waiver of any right or obligation hereunder must be in writing signed by the party against which such amendment or waiver is sought to be enforced.

M. The Company agrees that BGSA has the right to describe its services to the Company in connection with the Transaction and to reproduce the Company's name and logo in BGSA's marketing materials. Any right to use the Company's name and logo shall not be deemed a license of any trademark of the Company (whether registered or unregistered) or any intellectual property of the Company in any respect.

N. The invalidity or unenforceability of any provision of this letter agreement shall not affect validity or enforceability of any other provision herein, which shall remain in full force and effect. The benefits of, and obligations and liabilities assumed in, this letter agreement shall inure to the benefit of, and be binding upon, any successors and assigns, including, but not limited to, any "Indemnified Parties" identified in *Annex A*.

O. BGSA's engagement for a Transaction shall be on a "reasonable efforts" basis. The scope of BGSA's engagement shall be limited to matters expressly set forth in this letter agreement, and shall not include tax, legal, regulatory, accountancy or other specialist or technical advice or associated services, as to which the Company agrees to seek appropriate advice from other sources.

P. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. It is mutually agreed that signature pages transmitted by email or facsimile shall be accepted as and have the full force and effect as original signature pages.

If this Agreement accurately reflects the terms of our engagement, please sign below and return to me at your earliest convenience.

Thank you.

Sincerely,

Benjamin Gordon
BG Strategic Advisors, LLC

ACCEPTED AND AGREED:

Ohad Axelrod
FreightHub, Inc.

Page 4 of 8

**ANNEX A: Indemnity**

The Company agrees to indemnify BGSA and/or any controlling person, partner, director, officer, employee, agent, independent contractor, affiliate and representative of BGSA (hereinafter collectively referred to as the "Indemnified Parties") and hold each of them harmless against any losses, claims, damages, reasonable expenses (including the reasonable fees and expenses of their respective attorneys), liabilities, actions, suits or proceedings, whether or not formal proceedings are instituted and whether or not the Indemnified Party is a party (all of the above being hereinafter collectively referred to as the "Liabilities") directly relating to, or resulting from, the services provided by BGSA hereunder, BGSA's engagement or contemplated by this Agreement, unless it is determined in a final judgment by a court or arbitration panel of competent jurisdiction that the Liabilities resulted solely from the bad faith, gross negligence, willful misconduct of, or material breach of the Agreement by, Indemnified Parties, and in case any action shall be brought against Indemnified Parties with respect to which indemnity may be sought against the Company, BGSA shall notify the Company in writing and the Company shall assume the defense thereof, including employment of counsel satisfactory to BGSA and payment of all fees and expenses.

Indemnified Parties have the right to separate counsel, but such counsel fees shall be at the expense of the Indemnified Parties, unless (i) employment of such counsel has been authorized in an advanced writing by the Company, (ii) the Company has failed to assume defense and employ counsel as required above within a reasonable period of time, or (iii) named parties to any such action (including any impleaded parties) include both (a) Indemnified Parties and (b) the Company, and Indemnified Parties have been advised by counsel that there are legal defenses available to the Indemnified Parties which are different from those available to the Company (in which case the Company shall not have the right to assume defense of such action on behalf of Indemnified Parties); it being understood, however, that the Company shall not, in connection with any such action or related actions in the same jurisdiction arising out of the same general allegations, be liable for reasonable expenses of more than one separate legal firm for the Indemnified Parties, which firm shall be designated in writing by BGSA.  For actions brought against Indemnified Parties for which the Company has assumed defense, the Company agrees to not enter into settlement of any such action without Indemnified Parties' prior written consent unless any such settlement includes an unconditional release of all Indemnified Parties of any Liability arising out of such claim, action, suit or proceeding.

If the indemnity referred to in this Annex should be, for any reason, unenforceable, unavailable or otherwise insufficient to hold each Indemnified Party harmless for all losses incurred, the Company shall pay to or on behalf of each Indemnified Party contributions for Losses so that each Indemnified Party ultimately bears only a portion of such Losses as is appropriate (i) to reflect relative benefits received by each such Indemnified Party, respectively, on one hand and the Company on the other hand in connection with the Transaction and (ii) relative fault of each such Indemnified Party, respectively, and the Company as well as any other relevant considerations as determined by a competent court or arbitrator.. The relative fault of each Indemnified Party and the Company shall be determined by reference to, among other things, whether actions or omissions to act were by such Indemnified Party or the Company, and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such action or omission to act.

In no event shall any Indemnified Party be deemed grossly negligent to the extent such party is acting in accordance with or in reliance on the direction or authority of the Company.  In no event shall any Indemnified Party be liable for lost profits, consequential damages, special damages, incidental damages, punitive damages or similar items other than actual damages, in connection with any matter relating to the engagement of BGSA pursuant to the Agreement. Notwithstanding anything to the contrary, in no event shall the aggregate liability of all Indemnified Parties in connection with any matter relating to the engagement of BGSA pursuant to the Agreement, exceed the amount of the fees (exclusive of expense reimbursement) actually paid to BGSA pursuant to the Agreement in respect of the relevant Transaction.  In no event, regardless of the legal theory advanced shall any Indemnified Party be liable for any consequential, indirect, incidental or special damages of any nature.

The provisions of this agreement shall apply to the engagement and any modification thereof and shall remain in full force and effect for a period of 36 months following any termination or the completion of BGSA's services under the Agreement. Our agreements hereunder shall be in addition to any liabilities we may otherwise have, shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of you or us.

- This Indemnity shall be governed by and construed in accordance with the laws of Florida without reference to principles of conflicts of law.

**ANNEX B: Strategic Companies**

For purposes of clarity, the following companies shall be among those companies included as "strategic companies" or "strategic clients" as referred to in section A1 of this letter:

| Company | First Name | Last Name | Title |
|---|---|---|---|
| 10-4 Systems | | | CEO |
| 1st Choice Delivery | | | President/CEO |
| 3GTMS | | | CEO |
| 4Sameday Transportation | | | President |
| ABCO GLOBAL | | | CEO and Member of the Panama Canal Advisory Board |
| aljex | | | CEO |
| Aon Risk Solutions | | | CEO |
| ArcBest | | | Chief Customer Experience Officer |
| ARMADA | | | CEO |
| ARMADA | | | President and COO |
| Blu Logistics | | | Managing Director |
| BLUE LOGISTICS - Central America | | | President |
| bringg | | | CEO |
| Brinks Inc | | | Senior Vice President |
| CAPACITY LLC | | | CHIEF EXECUTIVE |
| Cardinal Health | | | VP, Business Development |
| Celadon Group Inc. | | | CEO |
| CI Capital Partners | | | Managing Director |
| CI Capital Partners | | | Senior Adviser |
| Colliers International | | | SVP |
| Convey | | | CEO |
| Coregistics | | | CEO |
| Daseke Inc. | | | President & CEO |
| DB Schenker | | | Regional CEO Americas |
| DHL | | | CEO DHL Supply Chain Latin America |
| DHL Supply Chain | | | CIO North America |
| DSC Logistics | | | CFO |
| DSC Logistics | | | Chairman and CEO |
| DTC Logistics | | | CEO |
| Dupre' Logistics, LLC | | | CEO |
| Echo Global Logistics | | | Chairman & CEO |
| Echo Global Logistics | | | Vice President, Corporate Development |
| eShipping | | | Founder/CEO |
| Expak Logistics | | | CEO |
| Expo Pass | | | Customer Success |
| ExpressPoint Technology Services | | | Chairman and Chief Executive Officer |
| FedEx Services | | | VP, Sales |

NOT A CERTIFIED COPY



| Company | | | Title |
|---|---|---|---|
| Flagship Food Group | | | CEO |
| Flagship Food Group | | | CFO |
| Freight Force, Inc. | | | CEO |
| Freightos | | | CEO |
| FSA Logistix, Inc. | | | Executive Chairman |
| Geodis Logistics LLC | | | CEO & President |
| Global SCV | | | President |
| GlobalTranz | | | Chief Executive Officer |
| Grand Junction (Target) | | | CEO |
| Ingram Micro | | | EVP & President Commerce & Lifecycle Solutions |
| Intelligent Audit | | | CEO |
| Intelligent Audit | | | President of Sales |
| International Package Shipping | | | CEO |
| International Package Shipping | | | Chairman |
| JDA | | | Senior Vice President |
| Kane Warehousing, Inc. | | | President & CEO |
| Kenco | | | Senior Vice President |
| KTI, Inc. | | | President |
| Lanetix | | | CEO |
| Livingston International | | | Chief Executive Officer |
| Livingston International | | | Executive Chairman |
| LoadDelivered | | | CEO and Co-founder |
| LOGEX Solutions, LLC | | | Managing Partner |
| LOGISTICAL LABS | | | CHIEF COMMERCIAL OFFICER |
| Logistical Labs | | | COO |
| Magnate Worldwide | | | CEO |
| Ministry of the Presidency | | | Minister |
| MIQ Logistics | | | President and Chief Executive Officers |
| Neovia Logistics | | | Chief Operating Officer |
| Network Global Logistics | | | CEO |
| Network Global Logistics | | | Executive Chairman |
| NFI | | | CEO |
| nuVizz, Inc. | | | CEO |
| Optym | | | Executive Vice President - Transportation & Logistics |
| Pacific American Group | | | CEO |
| Panama Canal | | | Minister of Panama Canal Affairs |
| Pegasus Analytics | | | President |
| Pegasus Logistics Group | | | CEO |
| Pegasus Logistics Group | | | CFO |
| Pierbridge, Inc., | | | CEO |
| Pilot Freight Services | | | Chairman |
| PINC | | | CEO |
| Ports America | | | CEO |



| Progistics-TAG | | | CEO |
|---|---|---|---|
| Progistics-TAG | | | CFO |
| Purolator Inc. | | | President & CEO |
| roadone | | | ceo |
| Romark Logistics | | | President |
| RRP Packaging | | | President |
| Saddle Creek Logistics Services | | | COO |
| Savage | | | President & CEO |
| SeaLand | | | CEO |
| Shear Family Office | | | Chairman |
| Supply Tigers | | | General Manager |
| The Descartes Systems Group Inc. | | | CEO |
| The Descartes Systems Group Inc. | | | President & COO |
| TMW Systems | | | President |
| Tompkins International | | | Executive Vice President |
| Transplace | | | CEO |
| Transportation Insight, LLC | | | Founder and Chairman |
| Turvo | | | CEO |
| Universal Logistics Holdings | | | CEO |
| UPS Freight | | | President |
| VERSACOLD LOGISTICS SERVICES | | | PRESIDENT & CEO |
| Walmart | | | EVP Logistics, (Ret) |
| Werner Enterprises | | | President and CEO |
| Worldwide Express | | | CEO |
| Worldwide Express | | | COO |
| Worldwide Express | | | Executive Vice President |
| YRC Worldwide | | | CEO |
| YRC Worldwide | | | Chief Financial Officer |

**PEARL COHEN**   Pearl Cohen Zedek Latzer Baratz LLP

January 21, 2020

BGSA Strategic Advisors, LLC
Attn: Benjamin Gordon
525 South Flagler Drive, Suite 200
West Palm Beach, FL 33401

Dear Mr. Gordon,

      Pursuant to the Engagement Letter entered into by you and Freighthub, Inc., dated on or about December 11, 2017, enclosed please find a stock certificate evidencing your shares of capital stock of Freighthub, Inc.

      Should you have any questions please contact me at the information provided below, or Edmundo Gonzalez.

                Very Truly Yours,

                Justin Lurie, Esq.
                Pearl Cohen Zedek Latzer Baratz LLP
                (T) ████████████
                (E) ████████████
                Address: 1500 Broadway, 12th Floor
                New York, NY 10036

**EXHIBIT B**

INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

| Number | | Shares |
| --- | --- | --- |
| **NVC-1** | | **80,000** |

# FREIGHTHUB, INC.

Total Authorized Capital Stock of 359,305 shares, par value US $0.00001

This is to Certify that ** BGSA Holdings LLC ** is the registered holder of **80,000** shares of Non-Voting Common Stock of FreightHub, Inc., hereinafter designated the "Corporation", transferable on the share register of the Corporation upon surrender of this certificate, properly endorsed or assigned.

This certificate and the shares represented thereby shall be held subject to all the provisions of the Certificate of Incorporation and the Bylaws of the Corporation, a copy of each of which is on file at the office of the Corporation, and made a part hereof as fully as though the provisions of said Certificate of Incorporation and Bylaws are imprinted in full on this certificate, to all of which the holder of this certificate, by acceptance hereof, asserts and agrees to be bound.

WITNESS THE SIGNATURE OF ITS DULY AUTHORIZED OFFICER, THIS 2nd DAY OF JANUARY, 2020

Edmundo Gonzalez, Secretary

THIS CERTIFICATE IS SUBJECT TO THE RESTRICTIONS SET FORTH ON THE BACK HEREOF.

NOT A CERTIFIED COPY