**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

_____

Case No. 9-21-CV-80299-WM

BG STRATEGIC ADVISORS, LLC,

        Plaintiff,

vs.

FREIGHTHUB, INC.,

        Defendant,

    and

FREIGHTHUB, INC.,

        Counterclaim Plaintiff,

vs.

BG STRATEGIC ADVISORS, LLC;
BGSA HOLDINGS, LLC; and
BENJAMIN H. GORDON,

        Counterclaim Defendants.

_____/


**ANSWER, AFFIRMATIVE DEFENSES AND FIRST AMENDED**
**COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

      Defendant FreightHub, Inc. ("FreightHub" or "Defendant"), by and through its attorneys, hereby responds to the First Amended Complaint of plaintiff BG Strategic Advisors, LLC ("BGSA" or "Plaintiff") in the above-captioned action as follows:[1]

---

[1] Defendant's First Amended Counterclaims, _see_ pp. 10-34 _infra_, are unchanged from those First Amended Counterclaims previously filed by Defendant at ECF 23, and are restated in their entirety herein for clarity and consistency.

## ANSWER

1.      Defendant admits BGSA is a Florida-based advisory firm, and that BGSA provides services for companies in the supply chain sector. Defendant otherwise denies the allegations in this paragraph.

2.      Defendant admits its business involves cross-border shipping. Defendant otherwise denies the allegations in this paragraph.

3.      Defendant admits the allegations in this paragraph.

4.      Defendant admits it is a Delaware corporation, and otherwise denies the allegations in this paragraph.

5.      Defendant admits the allegations in this paragraph.

6.      Defendant admits BGSA is a Florida citizen. Defendant otherwise lacks sufficient knowledge to form a belief about the truth of the allegations in this paragraph, and denies the allegations in this paragraph.

7.      Defendant admits the allegations in this paragraph.

8.      Defendant admits the agreement at issue places venue in this circuit, and otherwise denies the allegations in this paragraph.

9.      Defendant denies the allegations in this paragraph.

10.      Defendant denies the allegations in this paragraph.

11.      Defendant denies the allegations in this paragraph.

12.      Defendant denies the allegations in this paragraph.

13.      Defendant denies the allegations in this paragraph.

14.      Defendant denies the allegations in this paragraph.

15.      Defendant admits it issued eighty thousand (80,000) shares of stock to BGSA Holdings, LLC, and otherwise denies the allegations in this paragraph.

16.      Defendant denies the allegations in this paragraph.

17.      Defendant denies the allegations in this paragraph.

18.      Defendant denies the allegations in this paragraph.

19.      Defendant denies the allegations in this paragraph.

20.      Defendant denies the allegations in this paragraph.

21.      Defendant denies the allegations in this paragraph.

22.     Defendant denies the allegations in this paragraph.

23.     Defendant denies the allegations in this paragraph.

24.     Defendant denies the allegations in this paragraph.

25.     Defendant denies the allegations in this paragraph.

26.     Defendant denies the allegations in this paragraph.

27.     Defendant admits the language quoted in this paragraph derives from the letter attached by Plaintiff as Exhibit A of its First Amended Complaint, and otherwise denies the allegations in this paragraph.

28.     Defendant denies the allegations in this paragraph.

29.     Defendant denies the allegations in this paragraph.

30.     Defendant denies the allegations in this paragraph.

31.     Defendant denies the allegations in this paragraph.

32.     Defendant denies the allegations in this paragraph.

33.     Defendant denies the allegations in this paragraph.

34.     Defendant denies the allegations in this paragraph.

35.     Defendant denies the allegations in this paragraph.

## Count I
## "BREACH OF AGREEMENT"

36.     Defendant denies the allegations in this paragraph.

37.     Defendant denies the allegations in this paragraph.

38.     Defendant denies the allegations in this paragraph.

39.     Defendant denies the allegations in this paragraph.

## Count II
## "ANTICIPATORY BREACH OF AGREEMENT"

40.     Defendant denies the allegations in this paragraph.

41.     Defendant denies the allegations in this paragraph.

42.     Defendant denies the allegations in this paragraph.

43.     Defendant denies the allegations in this paragraph.

## Count III
## "DECLARATORY JUDGMENT"

44.     Defendant admits the allegations in this paragraph.

45.     Defendant admits that Plaintiff states its contention, but denies the truth of the contention in this paragraph.

46.     Defendant admits that it disputes Plaintiff's allegations and that the engagement letter violates public policy. Defendant otherwise denies the allegations in this paragraph.

47.     Defendant admits that Plaintiff states its contention, but denies the truth of the contention in this paragraph.

48.     Defendant admits the allegations in this paragraph.

49.     Defendant admits the allegations in this paragraph.

50.     Defendant admits the allegations in this paragraph.

51.     Defendant admits the allegations in this paragraph.

52.     Defendant lacks knowledge sufficient to form a belief about whether it is before the Court "by proper process," and otherwise admits the allegations in this paragraph.

Defendant denies all allegations in any unnumbered paragraphs or prayer(s) for relief in the First Amended Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

### Full Performance

1.     Defendant has fully performed, satisfied and discharged any and all duties and obligations to Plaintiff. Defendant has fully paid all compensation owed.

### Illegality

2.     The alleged agreement, or one or more of its terms, is illegal or otherwise unenforceable on its face or in its performance, including, but not limited to, for the reasons set forth in Defendant's First Counterclaim (Violation of the Investment Advisers Act of 1940), Third Counterclaim (for "Rescission or Reformation of Agreement"), and

Sixth Counterclaim (for "Declaratory Judgment") against BGSA stated below, *see* First Amended Counterclaims *infra* at ¶¶ 154-175; 194-205; 221-223, including Plaintiff's failure to comply with applicable securities regulations; Plaintiff or its affiliates' failure to remain involved with Defendant; Plaintiff or its affiliates or designees failure to invest in FreightHub; Plaintiff's false statements regarding its registration status, its intention to invest in Defendant, and concealment of facts and information relating to the SEC's investigation and subsequent Order against Benjamin H. Gordon ("Gordon"); Plaintiff's failure to identify conflicts of interest among BGSA or its affiliates acting as investment advisors and investors; Plaintiff's failure to meet the threshold requirements for payment of the "Retainer" under the alleged agreement; Plaintiff's failure to provide any ongoing services to Defendant or to otherwise meet any of its obligations under the alleged agreement, including with respect to engaging in any efforts to find a "Transaction" or multiple "Transactions" acceptable to Defendant; Plaintiff's violation of the Investment Advisers Act of 1940, including §§ 206 and 215(b) thereof, as a result of its failure to disclose to FreightHub that (i) Gordon was found by the SEC to have willfully violated provisions of the Securities Act of 1933 or the Securities Exchange Act of 1934; (ii) that Gordon was barred at the time of a number of his communications with FreightHub from any association with Plaintiff; (iii) that Gordon was found by the SEC to have acted negligently in the disclosure of information to shareholders; (iv) that Gordon was fined $100,000 by the SEC; and Plaintiff's falsely stating that the SEC's order did not prevent FreightHub from engaging Gordon as a consultant.

**Unclean Hands**

3.     Plaintiff's claims are barred by unclean hands. Plaintiff engaged in misconduct via acts and omissions it performed or failed to perform as Defendant's advisor, including, but not limited to, Plaintiff's failure to comply with applicable securities regulations; Plaintiff or its affiliates' failure to remain involved with Defendant; Plaintiff or its affiliates or designees failure to invest in FreightHub; Plaintiff's false statements regarding its registration status, its intention to invest in Defendant, and concealment of facts and information relating to the SEC's investigation and subsequent Order against Gordon; Plaintiff's failure to identify conflicts of interest

5

among BGSA or its affiliates acting as investment advisors and investors; Plaintiff's failure to meet the threshold requirements for payment of the "Retainer" under the alleged agreement; Plaintiff's failure to provide any ongoing services to Defendant or to otherwise meet any of its obligations under the alleged agreement, including with respect to engaging in any efforts to find a "Transaction" or multiple "Transactions" acceptable to Defendant; Plaintiff's violation of the Investment Advisers Act of 1940, including §§ 206 and 215(b) thereof, as a result of its failure to disclose to FreightHub that (i) Gordon was found by the SEC to have willfully violated provisions of the Securities Act of 1933 or the Securities Exchange Act of 1934; (ii) that Gordon was barred at the time of a number of his communications with FreightHub from any association with Plaintiff; (iii) that Gordon was found by the SEC to have acted negligently in the disclosure of information to shareholders; (iv) that Gordon was fined $100,000 by the SEC; and Plaintiff's falsely stating that the SEC's order did not prevent FreightHub from engaging Gordon as a consultant.

## Failure to Mitigate Damages

4.      Plaintiff failed to mitigate its alleged damages. Plaintiff waited for Defendant to undertake one or more subsequent transactions before commencing this civil action seeking fees for such transactions.

## Laches

5.      Plaintiff's claims are barred by laches. Defendant is prejudiced by Plaintiff's inequitable delay in bringing this action, as, among other things, Plaintiff has not had any meaningful involvement with Defendant since approximately November 2018, but waited for Defendant to undertake one or more subsequent transactions before commenting this civil action seeking fees for such transactions, and, indeed, only commenced this action following the public announcement, on or about October 10, 2020, that Defendant had entered into a definitive agreement in contemplation of a large anticipated merger in 2021.

**Speculative Damages**

6.     Plaintiff's alleged damages are speculative and unrecoverable in that not all of the transactions to which Plaintiff claims entitlement to fees have been consummated, and, upon information and belief, Plaintiff has not otherwise suffered any actual damage relating to transactions on which it did not provide any services or assistance.

**Accord and Satisfaction**

7.     Recovery is barred under the doctrine of accord and satisfaction pursuant to Defendant's delivery of a certificate for 80,000 shares of FreightHub common stock to BGSA Holdings, LLC in January 2020.

**Condition Precedent**

8.     Recovery of fees based on one or more transactions is barred by the absence of one or more conditions precedent, including, but not limited to, Plaintiff's failing to comply with applicable securities regulations; Plaintiff or its affiliates' failure to remain involved with Defendant; the failure of Plaintiff or its affiliates or designees to invest in Defendant; Plaintiff's false statements regarding its registration status, its intention to invest in Defendant, and concealment of all facts and information relating to the SEC's investigation and subsequent Order against Gordon; Plaintiff's failure to identify conflicts of interest among BGSA and its affiliates acting as investment advisors and investors; Plaintiff's failure to meet the threshold requirements for payment of the "Retainer" under the alleged agreement; and Plaintiff's failure to provide any ongoing services to Defendant or to otherwise meet any of its obligations under the alleged agreement, including with respect to engaging in any efforts to find a "Transaction" or multiple "Transactions" acceptable to Defendant.

**Uncertainty**

9.     The alleged agreement is so indefinite and uncertain as to one or more of its terms that it is not susceptible to performance, including, but not limited to, as it

relates to the meaning of the term "Transaction," the threshold requirements that must be satisfied for the payment of the "Retainer," and the agreement's term and termination.

### Estoppel

10.    Recovery is barred under one or more principles of estoppel, including equitable estoppel, estoppel by acquiescence and/or estoppel in pais.

### Lack of Adequate Assurance

11.    Defendant's performance under the alleged agreement is excused because Plaintiff failed to provide Defendant with adequate assurance of its own performance, including, but not limited to, Plaintiff's failing to comply with applicable securities regulations; Plaintiff or its affiliates' failure to remain involved with Defendant; the failure of Plaintiff or its affiliates or designees to invest in Defendant; Plaintiff's false statements regarding its registration status, its intention to invest in Defendant, and concealment of all facts and information relating to the SEC's investigation and subsequent Order against Gordon; Plaintiff's failure to identify conflicts of interest among BGSA and its affiliates acting as investment advisors and investors; Plaintiff's failure to meet the threshold requirements for payment of the "Retainer" under the alleged agreement; and Plaintiff's failure to provide ongoing services to Defendant or to otherwise meet any of its obligations under the alleged agreement, including with respect to engaging in any efforts to find a "Transaction" or multiple "Transactions" acceptable to Defendant.

### Prior Breach

12.    Defendant's performance under the alleged agreement is excused by one or more prior breaches by Plaintiff, including, but not limited to, Plaintiff's failing to comply with applicable securities regulations; Plaintiff or its affiliates' failure to remain involved with Defendant; the failure of Plaintiff or its affiliates or designees to invest in Defendant; Plaintiff's false statements regarding its registration status, its intention to invest in Defendant, and concealment of all facts and information relating to the SEC's investigation and subsequent Order against Gordon; Plaintiff's failure to identify conflicts

of interest among BGSA and its affiliates acting as investment advisors and investors; Plaintiff's failure to meet the threshold requirements for payment of the "Retainer" under the alleged agreement; and Plaintiff's failure to provide any ongoing services to Defendant or to otherwise meet any of its obligations under the alleged agreement, including with respect to engaging in any efforts to find a "Transaction" or multiple "Transactions" acceptable to Defendant.

### Unconscionability

13.     Defendant's performance under the alleged agreement is excused because the alleged agreement, one or more of its terms, or further performance thereunder is or would be unconscionable, as, among other things, Plaintiff alleges that the agreement can only be terminated under very limited circumstances and otherwise requires the payment of fees indefinitely irrespective of Plaintiff's rendition of any services.

### Impossibility

14.     Defendant's performance under the alleged agreement was rendered impossible by acts or omissions of Plaintiff.

### Liquidated Damages

15.     The amounts sought by Plaintiff under the alleged agreement, which Plaintiff alleges must be paid indefinitely irrespective of Plaintiff's rendition of any services, constitute liquidated damages that are prohibited as an unenforceable penalty under applicable law.

### Agreement is Void and/or Unlawful

16.     The alleged agreement, which purports to provide no grounds pursuant to which Plaintiff may be terminated other than for cause, and which Plaintiff alleges provides for the payment of fees indefinitely irrespective of Plaintiff's rendition of any services, is a contract that is void, unlawful, and/or unenforceable under Florida law as being in restraint of trade or commerce under Chapter 542 of the Florida Statutes, including Fla. Stat. §§ 542.18 and 542.335.

## FIRST AMENDED COUNTERCLAIMS

Defendant-counterclaim plaintiff FreightHub, Inc. ("FreightHub" or "Defendant"), by and through its attorneys, as and for its first amended counterclaims ("Counterclaims") against plaintiff-counterclaim defendant BG Strategic Advisors, LLC ("BGSA" or "Plaintiff") and counterclaim defendants BGSA Holdings, LLC ("BGSA Holdings") and Benjamin H. Gordon, states as follows:

### Summary of Counterclaims

1.      This case concerns the past and ongoing exploitation of a business by an unscrupulous professional advisor.[2]

2.      BGSA, a self-styled "strategic advisor," insinuated itself into FreightHub's capital raising efforts in 2017, when FreightHub was still a fledgling business.

3.      BGSA overpromised, underdelivered, and ceased advising FreightHub in 2018.

4.      Ever since, BGSA has sought to extract additional fees from FreightHub without advising it.

5.      Save for pressing for more fees, BGSA has absolutely no present-day involvement with FreightHub.

6.      BGSA has not advised FreightHub for years. But it claims to be owed advisory fees from FreightHub in perpetuity – that is, *forever* – for transactions past and future, claiming there is no mechanism for FreightHub to end them.

7.      In the meantime, FreightHub's business has grown increasingly successful, and its investment activities increasingly substantial.

8.      BGSA's demands culminate – at least for now – with claims for fees in connection with FreightHub's unconsummated merger with a publicly-traded company, which is currently proposed for later in 2021 (the "Merger").

9.      BGSA's demands for fees under the Merger are inequitable and cynical.

10.     BGSA did absolutely no work on the Merger, advisory or otherwise.

---

[2] As used herein, and consistent with their plain meanings, the terms "adviser" and "advisor" are synonymous. Each means the other, unless otherwise stated.

11.     Yet BGSA seeks potentially lucrative fees for that transaction, as well as other alleged transactions from 2018 through the present, and beyond.

12.     BGSA points to a December 11, 2017 engagement letter (the "Engagement Letter," attached by Plaintiff as Exhibit A to its Complaint).

13.     In fact, by its terms the Engagement Letter is only effective as long as BGSA, or certain of its affiliates, "remains involved with the company."

14.     Neither BGSA nor those affiliates have "remain[ed] involved with the company" since 2018.

15.     Moreover, the Engagement Letter prepared by BGSA is missing one or more essential terms, notably including, but not limited to, a "without cause" termination provision.

16.     BGSA claims this is a basis to continue extracting fees indefinitely. In fact, it is the basis of an improper scheme to exploit the company.

17.     BGSA's relationship with FreightHub was controlled and guided by its namesake, principal and founding member, counterclaim defendant Benjamin H. Gordon ("Gordon"), who at all times relevant to the Counterclaims, was and is affiliated with BGSA and several entities affiliated with BGSA, including BGSA Holdings and Cambridge Capital LLC ("Cambridge Capital").

18.     The Engagement Letter states that in addition to advising FreightHub, "BGSA or its affiliates or designees intends to invest" in FreightHub.

19.     BGSA and Gordon designated their affiliate Cambridge Capital to pursue the FreightHub investment.

20.     Gordon directed not only BGSA's engagement with FreightHub, but Cambridge Capital's investment process in FreightHub.

21.     Neither BGSA nor Gordon disclosed to FreightHub the conflicts of interest that existed or might arise in acting as FreightHub's trusted advisor while at the same time acting on behalf of or in concert with its affiliate, prospective investor Cambridge Capital, or the nature of the affiliations among BGSA, Gordon and Cambridge Capital.

22.      Cambridge Capital performed due diligence and other steps in furtherance of an investment in 2018, but contrary to the intention stated in the Engagement Letter, did not invest in FreightHub.

23.      On or about June 20, 2019, Gordon was ordered suspended by the Securities and Exchange Commission for one (1) year for willful violations of United States securities laws, effective on or about July 1, 2019.

24.      The suspension prohibited Gordon from advising FreightHub during its term.

25.      Nevertheless, representing himself as acting on behalf of BGSA, and in violation of the suspension, Gordon continued to seek fees and advisory work from FreightHub during the term of his suspension.

26.      This conduct directly violated the SEC's suspension order.

27.      In light of the foregoing, and as further described below, the Engagement Letter, and further performance under the Engagement Letter, are void under the federal Investment Advisers Act of 1940 (the "Act").

28.      FreightHub counterclaims against BGSA on the basis of the Act; for breach of fiduciary duty; and for rescission or reformation of the Engagement Letter. FreightHub further counterclaims for unjust enrichment against BGSA and BGSA Holdings, which received compensation as BGSA's designee under the Engagement Letter. FreightHub further counterclaims against Gordon for aiding and abetting BGSA's violations of the Act. FreightHub seeks forfeiture, disgorgement and restitution of all cash and stock compensation paid, plus additional damages, costs, interest and fees. Finally, FreightHub seeks declaratory judgment as to the status of the Engagement Letter.

## Parties and Related Entities

29.      Counterclaim defendant Benjamin H. Gordon is a natural person domiciled in Florida. He is a citizen of the State of Florida.

30.      Plaintiff and counterclaim defendant BG Strategic Advisors, LLC is a Florida limited liability company with its principal place of business located in Palm Beach County, Florida.

31.     BGSA is a single-member LLC held by counterclaim defendant BGSA Holdings, LLC. At all times relevant to the counterclaims, BGSA is and was not a registered broker-dealer or a registered investment advisor with any body or authority, including the SEC, FINRA or the Florida Office of Financial Regulation. BGSA is and at all relevant times was an unregistered investment advisor.

32.     BGSA is controlled by BGSA Holdings, LLC, Gordon, and/or additional parties controlled by or aligned with Gordon.

33.     Counterclaim defendant BGSA Holdings, LLC is a Florida limited liability company with its principal place of business located in Palm Beach County, Florida. At all times relevant to the counterclaims, it is and was not a registered broker-dealer or a registered investment adviser with any body or authority, including the SEC, FINRA or the Florida Office of Financial Regulation.

34.     BGSA Holdings identifies its business address as 525 South Flagler Drive, Suite 200, West Palm Beach, Florida 33401, and identifies its main business phone number as (561) 932-1600.

35.     The membership interests in BGSA Holdings are held by (i) the Benjamin Gordon Revocable Trust, for which Gordon serves as Trustee, and (ii) the Elizabeth Gordon Irrevocable Children's Trust, for which Michael Daszkal serves as Trustee.

36.     Non-party Benjamin Gordon Revocable Trust is not a business trust, and its Trustee, Gordon, serves as a fiduciary with the power to hold, manage, and dispose of trust assets for the benefit of the trust's beneficiaries. Public records identify the Benjamin Gordon Revocable Trust as owning ninety-seven percent (97%) of BGSA Holdings.

37.     Non-party Elizabeth Gordon Irrevocable Children's Trust is not a business trust, and its Trustee, Michael Daszkal, serves as a fiduciary with the power to hold, manage, and dispose of trust assets for the benefit of the trust's beneficiaries. Non-party Michael Daszkal is domiciled in and a citizen of the State of Florida.

38.     At all times relevant to the counterclaims, BGSA Holdings was and is controlled by Gordon and/or additional parties controlled by or aligned with Gordon. It has identified Gordon as its "founder" or "principal." Gordon identifies himself as its "CEO" on his personal websites.

39.     BGSA and BGSA Holdings may be related to, intertwined with, or under common control with one more additional businesses or entities, which may be inseparable or operate interchangeably as one business enterprise or entity.

40.     Non-party BGSA LLC is a Delaware limited liability company. BGSA LLC was previously named BG Strategic Advisors, LLC, the same entity name as that of Plaintiff. BGSA LLC is a registered broker-dealer with the SEC and FINRA, CRD number 124448. It is not a registered investment advisor.

41.     BGSA LLC identifies its business address as the same business address as counterclaim defendant BGSA Holdings. It identifies its main business phone number as the same phone number as counterclaim defendant BGSA Holdings.

42.     Defendant Gordon was registered as a broker-dealer affiliated with BGSA LLC by the SEC and FINRA from December 2008 through June 2019, CRD number 5622898.

43.     Public records identify BGSA Holdings as owning seventy five percent (75%) or more of BGSA LLC.

44.     Non-party Cambridge Capital, LLC is a Delaware limited liability company doing business as Cambridge Capital LLC and as Cambridge Capital Investors, LLC. It invests in securities.

45.     At all times relevant to the counterclaims, Cambridge Capital was and is affiliated with BGSA and BGSA Holdings, and publicly identifies BGSA Holdings as its affiliate on its website. It identifies Gordon as its Managing Partner. Gordon identifies himself as its "CEO" on his personal website. At all relevant times Cambridge Capital was and is controlled by Gordon, and/or additional parties controlled by or aligned with Gordon.

46.     Cambridge Capital identifies its business address as the same business address as counterclaim defendant BGSA Holdings and non-party BGSA LLC. It identifies its main business phone number as the same phone number as counterclaim defendant BGSA Holdings and non-party BGSA LLC.

47.     Defendant and counterclaim plaintiff FreightHub, Inc. is a Delaware corporation with its principal place of business in the United States located in Montgomery County, Texas. Its foreign headquarters is located in Monterrey, Mexico.

**Jurisdiction and Venue**

48.     The Court has supplemental jurisdiction over Defendant's counterclaims, including counterclaims that involve the joinder of additional parties, under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's claims that they form part of the same "case or controversy" under Article III of the United States Constitution.

49.     The Court also has subject matter jurisdiction over Defendant's counterclaims under 28 U.S.C. § 1331 because its counterclaim under the Act arises under federal law.

50.     The Court also has subject matter jurisdiction over Defendant's counterclaims under 28 U.S.C. § 1332 because the citizenship of the parties is completely diverse and the amount in controversy between them exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

51.     Venue is proper in this Court because the Engagement Letter states, in relevant part, "The parties agree and consent to personal jurisdiction, service of process and venue in the Circuit Court in Palm Beach County, Florida or the Federal Court of the southern district of Florida for purposes of any action, suit or proceeding arising out of or relating to this Agreement."

52.     Venue is also proper in this Court because the case was properly removed to this Court from the Palm Beach County Circuit Civil Court for the 15th Judicial Circuit of the State of Florida, which is located in this Court's federal judicial district pursuant to 28 U.S.C. § 89.

**BGSA**

53.     BGSA was and is an investment advisor at all times relevant to the counterclaims.

54.     From at least 2016 through the present, BGSA holds itself out to the public as an investment advisor, variously touting its "strategic" and "M&A" advisory expertise and offering investment analysis on market trends and company performance focused on what it calls the "supply chain" sector.

55.     BGSA advises companies on the sale of their securities.

56.     BGSA publishes a monthly investment and market report it calls the "BGSA Supply Chain Index." According to its website, the BGSA Supply Chain Index "analyzes the absolute and relative share price performance of over 65 companies, representing 9 market segments and approximately $700 billion of market capitalization. These companies act as leading economic indicators and are therefore a good proxy for how the broader economy will perform in the coming months." BGSA has published the report for more than a decade.

57.     BGSA's investment and market index analyzes various metrics including stock price, market capitalization, debt, enterprise value, EBITDA, P/E ratios and the like.

58.     BGSA makes its investment and market report available for download or by monthly subscription.

59.     Gordon also publishes additional investment and market predictions and reports from his personal websites, referencing BGSA and the supply chain index data.

60.     BGSA hosts an annual industry conference, alternatively referred to as the "BG Strategic Advisors Supply Chain Conference" or the "BGSA Holdings Supply Chain Conference."

61.     BGSA, acting together with BGSA Holdings, Gordon and Cambridge Capital, organize, oversee and curate the supply chain conference and its attendees.

62.     One of the core purposes of the industry conference is facilitating capital raising and investment by and among its attendees, who include BGSA clients.

63.     BGSA and its affiliates determine the invite and attendee list of its annual conference.

64.     Gordon provides opening and introductory remarks, and otherwise acts as master of ceremonies for the annual conference.

65.     On its website, BGSA advertises services including "Value Audit – what is my business worth today?"; "Portfolio Strategy – which markets, geographies and service areas should I target for growth?"; "Business Strategy – how can I maximize my company's future value?"; "Strategic Valuation Assessment – what is our preliminary view of valuation, the key drivers, the risk factors, and their impact?"; "Competitive Benchmarking – who are the company's top competitors, and how do they compare?";

and "Financial Assessment – what is the company's quality of earnings and growth potential going forward?"

66.     BGSA identifies, grooms and curates potential investors and advisors for its clients, recommending or rejecting them based on BGSA's judgment and opinion.

67.     BGSA provides its clients with market predictions and prognostication, particularly in the "supply chain" sector.

68.     The BGSA website boasts that "clients rely on us for trusted and experienced transaction advice."

69.     It states: "We are a trusted partner for sell-side engagements, buy-side acquisition advisory [sic], strategic advice, and a variety of other investment banking services."

70.     It states: "Our clients' interests always come first. We provide outstanding service, driven by senior-level attention on every transaction. We believe our own success follows from an unwavering focus on client service."

### FreightHub Engages BGSA

71.     FreightHub was formed as a Delaware corporation in 2015.

72.     In late 2017, FreightHub engaged BGSA.

73.     At the time, FreightHub was a fledgling enterprise in the cross-border shipping and logistics industries.

74.     FreightHub was seeking to sell its securities to investors.

75.     BGSA claimed to FreightHub to have valuable connections and expertise in the sector.

76.     BGSA pitched FreightHub to engage it for its capital-raising prowess and investment advice.

77.     In furtherance of the engagement, BGSA prepared an engagement letter dated December 11, 2017 and delivered it to FreightHub.

**The Engagement Letter**

78.     The Engagement Letter purports to state "the terms under which BG Strategic Advisors, LLC ("BGSA") will act as investor and exclusive advisor to FreightHub, Inc."

79.     The Engagement Letter identifies the nature and scope of BGSA's advisory role:

> During the term of BGSA's engagement, BGSA will provide the Company with advice and assistance in connection with the Transaction which BGSA customarily provides for engagements of this type to assist the Company in its efforts to identify and execute Transactions. In particular, BGSA shall work with the Company's management to: (i) study the business and operations of the Company and provide feedback on the strategic and operational initiatives that will support the growth of the Company; (ii) identify prospective investors and/or targets for the Company who shall be subject to the prior written approval of the Company, such approval to be in the sole and absolute discretion of the Company (an "Approved Target"); (iii) coordinate the information flow, on-site visits and due diligence activities with Approved Targets; and (iv) any other services that are mutually agreed upon between the Company and BGSA or that are otherwise reasonable, customary and appropriate in undertakings of this nature.

80.     The Engagement Letter provides for an initial retainer fee, payable in stock, to "BGSA's principal, Benjamin Gordon and/or his designees."

81.     The initial retainer fee would become payable after FreightHub closed its first qualifying "Transaction," as defined in the Engagement Letter.

82.     The Engagement Letter further provides for "success fees" to BGSA for "consummation of any Transactions."

18

83.     The Engagement Letter does not provide for commissions to BGSA or the establishment of any banking, brokerage or other financial accounts with BGSA.

84.     Under the Engagement Letter, BGSA agreed to "maintain any information received by it from the Company in the strictest confidence and . . . maintain such information with the same level of confidentiality as it maintains its own confidential information."

85.     The Engagement Letter, by its terms, purports to waive and disclaim BGSA's fiduciary duties to FreightHub.

### Investment Under the Engagement Letter

86.     The Engagement Letter further contemplates an investment in FreightHub, stating BGSA "will act as investor and exclusive advisor to FreightHub, Inc."

87.     The Engagement Letter states that "BGSA or its affiliates or designees intends to invest in the Company (the 'BGSA Investment')."

88.     BGSA and Gordon designated their affiliate, Cambridge Capital, as the investor under the Engagement Letter.

89.     The Engagement Letter does not disclose any actual or potential conflicts of interest in connection with BGSA acting as FreightHub's advisor while its affiliate Cambridge Capital acts as FreightHub's investor, with Gordon directing both BGSA and Cambridge Capital.

90.     The Engagement Letter does not disclose any information concerning the financial relationships between, or duties among, BGSA, Gordon and Cambridge Capital.

### Benjamin H. Gordon

91.     The "BG" of BG Strategic Advisors, LLC refers to counterclaim defendant Benjamin H. Gordon.

92.     The Engagement Letter between FreightHub and BGSA contemplates personal performance by Gordon, and personally benefits Gordon.

93.     The Engagement Letter states: "Gordon and BGSA will also play a role helping to build and grow the Company, including introductions to customers, strategic feedback, and other services as appropriate."

94.     The Engagement Letter requires BGSA's initial retainer fee to be paid to "BGSA's principal, Benjamin Gordon and/or his designees."

95.     The Engagement Letter refers to BGSA's appointment as an ongoing advisor "for as long as BGSA, Cambridge Capital, or Gordon remains involved with the company."

96.     The Engagement Letter states that FreightHub will indemnify "BGSA and related persons."

97.     Gordon handled and was responsible for BGSA's FreightHub engagement.

### BGSA's Strategic Connections

98.     Under the Engagement Letter, BGSA managed FreightHub's introductions and access to a list of "strategic companies" or "strategic clients" that BGSA curated and controlled.

99.     BGSA identified these companies and individuals to FreightHub for purposes including offering and selling them FreightHub's securities.

100.    A three-page list of "strategic companies" or "strategic clients" is appended to the Engagement Letter. BGSA did not include contact information for the individuals and entities in the Engagement Letter, instead meting it out to FreightHub in the course of the engagement.

### Term and Termination

101.    The Engagement Letter states with respect to term and termination:

> The term of this Engagement will begin on the date of this letter and continue for twelve (12) months thereafter. In the event the Company consummates a Transaction during the term of this Engagement, then BGSA will be appointed as its ongoing advisor for the Company, on the same terms as this letter including paragraphs A and B unless otherwise mutually agreed, for as long as BGSA, Cambridge Capital, or Gordon remains involved with the company. The

Company shall have the right to terminate this Agreement, but only for cause. "Cause" in this agreement means (i) an intentional act of fraud by BGSA; (ii) an intentional and continuing breach of BGSA's material obligations under this agreement; (iii) BGSA failing to be a registered broker-dealer, or (iv) intentional and continued willful conduct by BGSA that is demonstrably and materially harmful to the Company. For purposes of this paragraph, an act, or a failure to act, shall not be deemed willful or intentional, as those terms are defined herein, unless it is done, or omitted to be done, in bad faith and without a reasonable belief that BGSA's actions were in the best interest of the company. Failure to meet objectives, by itself, does not constitute "Cause." In the event the Company believes BGSA has committed actions that would justify termination for Cause, then it shall give BGSA a written warning, and BGSA shall have the opportunity for a reasonable cure period (not to exceed 30 days) (the "Cure Period") in which it seeks to discontinue any actions that would justify termination for Cause. If BGSA succeeds in taking corrective action during this Cure Period, then the Company shall have no right to terminate BGSA for Cause. However, if BGSA fails to take corrective action during this Cure Period, then, and only then, the Company shall have the right to execute a Termination for Cause.

102.    The express terms of the Engagement Letter do not permit termination by FreightHub without "Cause."

### FreightHub Completes a 2018 Capital Raise

103.    FreightHub completed a 2018 capital-raising transaction following BGSA's engagement.

21

104.    BGSA advised FreightHub on the transaction.

105.    BGSA advised FreightHub on the offering and sale of its securities to investors.

106.    The transaction did not involve a merger, acquisition or change of control.

107.    BGSA identified prospective investors to FreightHub. It encouraged and discouraged interactions with potential counterparties, and served a gatekeeper function on the offering and sale of securities.

108.    BGSA invited FreightHub to its annual conference in January 2018.

109.    BGSA advised FreightHub on the suitability of investors and potential investors.

110.    In one instance in January 2018, Gordon emailed FreightHub: "You are going to be jam-packed with great meeting opportunities! [. . .] Just fyi, I know [individual name]. I would not ever do business with him. I'd prefer not to put it in writing, but trust me on this one."

111.    In other instances, Gordon identified potential investors as "high priority" or stated "I think he could very well be an investor as well as a customer here."

112.    BGSA furnished potential investors with information, including market projections, revenue and growth predictions, forecasts and models.

113.    BGSA advised FreightHub on due diligence and disclosures.

114.    BGSA's assistance was meager and disappointing.

115.    BGSA had touted its deep industry connections and expertise to FreightHub, suggesting it could help FreightHub raise millions of dollars in capital investment.

116.    In actuality, BGSA identified investors from whom FreightHub raised only $163,600.

117.    BGSA, Cambridge Capital and Gordon utilized information FreightHub provided to BGSA to price and otherwise set the terms of Cambridge Capital's potential investment.

118.    In January 2018, they presented FreightHub with a term sheet, proposing to acquire new "Series A Convertible Preferred Stock" in the company.

119.    As with the Engagement Letter, neither the term sheet nor any other communications from BGSA, Cambridge Capital or Gordon disclosed or explained any conflicts of interest.

120.    BGSA, Cambridge Capital and Gordon informed other prospective FreightHub investors that Cambridge Capital was investing in FreightHub.

121.    Gordon was intimately involved in both BGSA's and Cambridge Capital's work with FreightHub in 2018, directing affairs for both.

122.    Gordon utilized BGSA and Cambridge Capital email addresses interchangeably, emailing with and about FreightHub regularly from both addresses.

123.    Cambridge Capital did not invest in FreightHub.

### FreightHub Fully Paid BGSA

124.    FreightHub fully paid the success fee for the transaction.

125.    FreightHub fully paid the retainer fee.

126.    The Engagement Letter provided for payment of the retainer fee to "BGSA's principal, Benjamin Gordon and/or his designees." In satisfaction thereof, FreightHub delivered a certificate for 80,000 shares of FreightHub common stock to BGSA Holdings in January 2020.

### BGSA Ceases to Advise FreightHub

127.    Following their 2018 transaction, BGSA ceased to advise FreightHub.

128.    BGSA did no advisory work for FreightHub after approximately November 2018.

129.    BGSA and Gordon did not earn any further fees.

130.    On March 22, 2019, FreightHub wrote Gordon and BGSA, stating in part:

Following your initial involvement which resulted in investors investing $163,600 in the Company, neither you [Gordon] nor BGSA or Cambridge Capital have remained involved with the Company and no additional amounts were invested in the Company as a result of your involvement. Other than the initial few introductions to

23

executives and your role in bringing a small investment, you have played no advisory role with the Company, and you have had no involvement with the Company since November 2018. The Company appreciates your early contributions. However, as of November 2018, you have had no involvement with the Company and the Company therefore no longer considers you as an advisor to the Company.

131.   Despite receiving this notice, BGSA continued to seek advisory work and fees from FreightHub throughout 2019.

132.   FreightHub reiterated to BGSA in writing on October 25, 2019 that "[a] continued advisory role per your engagement letter is subject to the entities or you 'remain[ing] involved with the company.' It has been a year or more since that involvement."

**Gordon is Suspended and Fined by the SEC for Securities Violations**

133.   On or about June 20, 2019, the SEC administratively suspended Gordon for a period of one (1) year for willful violations of Sections 14 and 17 of the Securities Act and rules promulgated thereunder prohibiting, respectively, false or misleading statements in connection with the solicitation of a proxy, and obtaining money or property by means of untrue statements of material fact.

134.   Gordon was suspended, effective on or about July 1, 2019, from associating with or serving or acting on behalf of any broker, dealer or investment adviser for the term of the suspension.

135.   The SEC's administrative order (the "Order") directs, in relevant part:
Respondent Gordon be, and hereby is suspended for a period of 12 months from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; from serving or acting as an employee, officer, director, member of an advisory board,

investment adviser or depositor of, or principal underwriter
for, a registered investment company or affiliated person of
such investment adviser, depositor, or principal
underwriter; and from participating in any offering of a
penny stock, including: acting as a promoter, finder,
consultant, agent or other person who engages in activities
with a broker, dealer or issuer for purposes of the issuance
or trading in any penny stock, or inducing or attempting to
induce the purchase or sale of any penny stock, effective on
the second Monday following the entry of this Order.

136. Gordon was further directed to pay a civil money penalty of $100,000 to
the SEC under the Order.

### BGSA Conceals, Misrepresents, and Violates the Order

137. BGSA did not disclose the Order or Gordon's suspension and fine
thereunder to FreightHub.

138. BGSA did not disclose any of the Order's underlying terms, events or
circumstances to FreightHub.

139. In October 2019, four months into his suspension period, Gordon
continued writing FreightHub on behalf of BGSA, seeking additional BGSA fees and
advisory work, in direct violation of his suspension order.

140. After learning of the SEC matter from other sources, FreightHub raised
the topic with Gordon in October 2019.

141. On October 25, 2019, FreightHub emailed Gordon in relevant part:
Other shareholders have brought concerns to my attention
related to, among others, a Wells Notice and subsequent
fine by the SEC on another matter. I don't know what this
is about, and I'm sorry you're dealing with this. We
therefore would not be able to engage you as a consultant.

142. Gordon responded by email on the same day, writing in relevant part:

Thanks so much for raising that issue. Yes. I made the mistake of investing in a company whose CEO proved to be a bad guy. And yes, I lost money and am in litigation with them. And yes, I agreed to settle *on a no-admit basis* with the SEC in order to focus my efforts and resources on litigation with the company. No, that does not prevent you, or anyone, from "engaging me as a consultant." And yes, that also makes me that much more determined to stand up for my rights, and not get screwed again.

143.     BGSA's statement to FreightHub was incomplete, deceptive and misleading.

144.     BGSA did not disclose the Order to FreightHub or furnish FreightHub with a copy of the Order.

145.     BGSA did not disclose to FreightHub that Gordon was found by the SEC to have willfully violated provisions of the Securities Act of 1933 or the Securities Exchange Act of 1934.

146.     BGSA did not disclose to FreightHub that Gordon was barred at the time of his writing from any association with BGSA.

147.     BGSA did not disclose to FreightHub that Gordon was found by the SEC to have acted negligently in the disclosure of information to shareholders.

148.     BGSA did not disclose to FreightHub that Gordon was fined $100,000 by the SEC.

149.     BGSA falsely stated to FreightHub that the Order did not prevent FreightHub from engaging Gordon as a consultant. In fact, the Order expressly stated that Gordon was prohibited from associating with an investment adviser.

150.     BGSA did not supplement or correct any of these false, deceptive and misleading statements to FreightHub at a later date.

**BGSA Returns in Late 2020 to Demand More Fees**

151.     BGSA did not communicate with FreightHub for the first ten months of 2020.

152.    On or about October 10, 2020, FreightHub entered into a definitive agreement in contemplation of its anticipated 2021 Merger. Shortly thereafter, news of the planned Merger was publicly announced.

153.    On October 16, 2020, Gordon wrote FreightHub:

> I see Fr8Hub completed a transaction with Hudson Capital.
> Congratulations.
> Can you please send me the transaction documents and cap table, so we can calculate what 8% of the total equity capitalization is, and finalize this?
> Thank you.
> -Ben

**FIRST COUNTERCLAIM**
**(Against BGSA)**
**Violation of Investment Advisers Act of 1940**

154.    FreightHub hereby incorporates the allegations in Paragraphs 1 through 153 of its Counterclaims as if fully set forth herein.

155.    The federal Investment Advisers Act of 1940 governs "investment advisers."

156.    BGSA is an "investment adviser" under § 202(a)(11) of the Act.

157.    FreightHub engaged BGSA as its investment adviser, and BGSA served as its investment adviser.

158.    The Engagement Letter is an investment advisory agreement.

159.    Section 206 of the Act states in relevant part:

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly –
>
> (1)     to employ any device, scheme or artifice to defraud any client or prospective client;
>
> (2)     to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client; [. . .]

(4)     to engage in any act, practice, or course of business which is fraudulent, deceptive or manipulative.

160.    Section 215(b) of the Act states in relevant part:

Every contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract[.]

161.    BGSA repeatedly violated § 206 in its course of dealings with FreightHub.

162.    BGSA delivered an Engagement Letter to FreightHub wrongly purporting to waive its fiduciary duties to FreightHub, which the parties used as a basis for the engagement.

163.    BGSA delivered an Engagement Letter to FreightHub that FreightHub could not terminate in accordance with its terms, and sought to enforce it indefinitely against FreightHub's wishes.

164.    BGSA further schemed to obtain excessive and unearned fees from FreightHub based on transactions for which BGSA performed no work.

165.    BGSA failed to disclose the existence or nature of the conflicts of interest among BGSA, Cambridge Capital and Gordon in their relationships with FreightHub. It did not disclose the conflicts of interest in BGSA advising FreightHub while Cambridge Capital sought to invest in FreightHub and Gordon worked on behalf of and controlled both BGSA and Cambridge Capital.

166.    BGSA stated to FreightHub and its investors that BGSA or its designee or affiliate would invest in FreightHub, and neither BGSA nor its designee or affiliate did so.

167.    BGSA failed to disclose the SEC Order, fine, suspension or surrounding events and circumstances to FreightHub.

168. BGSA misrepresented and concealed the Order, fine, suspension, and surrounding events and circumstances to FreightHub.

169. BGSA falsely stated to FreightHub that Gordon was not prohibited from serving as FreightHub's advisor, when in fact he was.

170. By these and other acts, BGSA acted improperly and breached its fiduciary duties to FreightHub.

171. Under § 215(b) of the Act, the Engagement Letter is a contract "made in violation" of § 206 of the Act.

172. Under § 215(b) of the Act, performance of the Engagement Letter "involves the violation of, or the continuance of any relationship or practice in violation of," § 206 of the Act.

173. BGSA utilized the mails or other means or instrumentalities of interstate commerce in the course of its foregoing violations.

174. By way of the foregoing, the Engagement Letter, and further performance under the Engagement Letter, are void under § 215(b) of the Act.

175. Under the Act, FreightHub is entitled to restitution of all cash and stock paid under the Engagement Letter.

## SECOND COUNTERCLAIM
### (Against BGSA)
### Breach of Fiduciary Duty

176. FreightHub hereby incorporates the allegations in Paragraphs 1 through 153 of its Counterclaims as if fully set forth herein.

177. BGSA was FreightHub's investment adviser.

178. BGSA and Freighthub entered into a relationship of trust.

179. BGSA owed fiduciary duties to FreightHub.

180. BGSA breached its fiduciary duties to FreightHub.

181. BGSA's breaches include, but are not limited to, entering into, maintaining, and refusing to conclude an improper and impermissible advisory relationship with FreightHub.

182. According to BGSA, FreightHub could not terminate its advisory relationship.

183.    BGSA sought, and still seeks, advisory fees from FreightHub for transactions BGSA did not advise it on.

184.    The Engagement Letter prepared by BGSA provides for excessive and unearned compensation to BGSA.

185.    BGSA also breached its fiduciary duties by failing to disclose conflicts of interest in the relationships among BGSA, Cambridge Capital and Gordon in connection with advising and investing in FreightHub.

186.    BGSA also breached its fiduciary duties by promising an investment in FreightHub on behalf of itself or its designee or affiliate, and not so investing.

187.    BGSA also breached its fiduciary duties by failing to disclose material information to FreightHub concerning the Order, suspension, fine and surrounding events and circumstances.

188.    BGSA's misled FreightHub, misrepresented information to FreightHub, and made false and deceitful statements to FreightHub concerning the Order, suspension, fine and surrounding events and circumstances.

189.    The Engagement Letter states in relevant part, "BGSA will not assume responsibilities of a fiduciary to the Company or its stockholders in connection with the performance of services."

190.    Under applicable law and the Act, the Engagement Letter cannot abrogate, waive or disclaim BGSA's fiduciary duties to FreightHub.

191.    Section 215(a) of Act states: "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or with any rule, regulation, or order thereunder shall be void."

192.    The provision of the Engagement Letter disclaiming BGSA's fiduciary duties to FreightHub is void under § 215(a) of the Act and applicable law.

193.    BGSA's breaches of fiduciary duties to FreightHub caused FreightHub to suffer damages.

### THIRD COUNTERCLAIM
### (Against BGSA)
### Rescission or Reformation of Agreement

194.    FreightHub hereby incorporates all of the allegations in Paragraphs 1 through 153 of its Counterclaims as if fully set forth herein.

195.    Plaintiff and Defendant entered into an advisory services agreement.

196.    The written Engagement Letter prepared by BGSA and delivered to FreightHub fails to reflect one or more material terms of the parties' agreement.

197.    The Engagement Letter as written is illegal, inequitable and injurious to Defendant as a result of Plaintiff's actions.

198.    The Engagement Letter as written fails to contain express language governing termination without cause.

199.    The Engagement Letter as written fails to contain express language governing a term beyond an initial term.

200.    The Engagement Letter as written provides for excessive and unearned compensation to Plaintiff.

201.    The Engagement Letter contains one or more other vague, indefinite, and/or unconscionable terms that are inequitable and injurious to Defendant.

202.    The Engagement Letter is unenforceable as written.

203.    Defendant has suffered damages and will continue to suffer damages as a result of the Engagement Letter.

204.    Defendant has no adequate remedy at law.

205.    The Engagement Letter should be rescinded, or else reformed, in the interests of equity.

### FOURTH COUNTERCLAIM
### (Against BGSA and BGSA Holdings)
### Unjust Enrichment

206.    FreightHub hereby incorporates all of the allegations in Paragraphs 1 through 153 of its Counterclaims as if fully set forth herein.

207.    FreightHub conferred benefits on BGSA and BGSA Holdings under the Engagement Letter, each of whom has knowledge thereof, in the form of cash compensation to BGSA and stock compensation to BGSA Holdings.

208.    BGSA and BGSA Holdings voluntarily accepted and retained the respective benefits conferred upon them.

209.    The circumstances render their retention of the benefits conferred upon them inequitable and unjust.

210.    Defendant has no adequate remedy at law.

211.    BGSA and BGSA Holdings are liable to FreightHub for their unjust enrichment.

**FIFTH COUNTERCLAIM**
**(Against Benjamin H. Gordon)**
**Aiding and Abetting**

212.    FreightHub hereby incorporates all of the allegations in Paragraphs 1 through 153 of its Counterclaims as if fully set forth herein.

213.    BGSA violated the Act and breached its fiduciary duties in its dealings with FreightHub.

214.    Gordon personally aided and abetted BGSA's violations of the Act and breaches of fiduciary duty to FreightHub.

215.    The Engagement Letter contemplates Gordon's personal service to and involvement with FreightHub.

216.    Gordon worked on behalf of and directly or indirectly controlled each of BGSA, BGSA Holdings and Cambridge Capital in their dealings with FreightHub.

217.    Gordon was intimately knowledgeable about the nature and terms of BGSA's advisory relationship with FreightHub.

218.    Gordon was intimately knowledgeable about the nature and terms of Cambridge Capital's investor relationship with FreightHub.

219.    Gordon caused and proximately caused BGSA to violate the Act and breach its fiduciary duties to FreightHub by preparing and negotiating the Engagement Letter, failing to disclose conflicts of interest among BGSA, Cambridge Capital and

Gordon, failing to disclose the nature and terms of his SEC suspension, and continuing to be involved with BGSA and FreightHub in violation of his SEC suspension.

220.   Gordon is liable to FreightHub for aiding and abetting.

## SIXTH COUNTERCLAIM
### (Against BGSA, BGSA Holdings and Gordon)
### Declaratory Judgment

221.   FreightHub hereby incorporates all of the allegations in Paragraphs 1 through 153 of its Counterclaims as if fully set forth herein.

222.   The rights, duties and obligations of the parties with respect to the Engagement Letter and their agreement remain unsettled.

223.   Defendant requests the Court enter judgment declaring that the Engagement Letter is void and of no effect, and that no other or further agreement obtains between Plaintiff and Defendant; or in the alternative, otherwise clarifies the rights, duties and obligations of the parties with respect to the Engagement Letter and their agreement.

**WHEREFORE**, Defendant-counterclaim plaintiff FreightHub, Inc. respectfully requests that the Court:

A.   Dismiss Plaintiff's Complaint in its entirety;

B.   Enter judgment in Defendant's favor on all of Plaintiff's claims and Defendant's counterclaims;

C.   On Defendant's First Counterclaim, void the Engagement Letter and further performance under the Engagement Letter, and award forfeiture, restitution and disgorgement to Defendant of all compensation paid thereunder;

D.   On Defendant's Second Counterclaim, award forfeiture, restitution and disgorgement to Defendant of all compensation paid by Defendant, plus additional damages in favor of Defendant in an amount to be determined;

E.   On Defendant's Third Counterclaim, rescind or else reform the Engagement Letter to comply with applicable law and do equity;

F.      On Defendant's Fourth Counterclaim, award Defendant the value of all benefits unjustly conferred on BGSA and BGSA Holdings;

G.      On Defendant's Fifth Counterclaim, find Gordon jointly and severally liable for all damages and relief awarded against BGSA and BGSA Holdings;

H.      Enter declaratory judgment voiding, or else otherwise determining the status of, the Engagement Letter and the parties' agreement;

I.      Award Defendant its reasonable costs, interest and fees, including attorneys' fees; and

J.      Grant and award such other and further relief as the Court deems just and proper.

Date: July 21, 2021

Respectfully submitted,
SEQUOR LAW
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
fmenendez@sequorlaw.com
Telephone:      (305) 372-8282
Facsimile:      (305) 372-8202

By:    */s/ Fernando J. Menendez*
        Fernando J. Menendez
        Florida Bar No.: 18167

and

RPCK RASTEGAR PANCHAL LLP,
60 E. 42nd Street, Suite 2410
New York, NY 10165
jeremy.saks@rpck.com
Telephone:      (212) 594-9600

*Attorneys    for    Defendant-Counterclaim Plaintiff FreightHub, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case on July 21, 2021.

*/s/ Fernando J. Menendez*
Fernando J. Menendez
