UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-80299-Civ-Matthewman

_____

BG STRATEGIC ADVISORS, LLC,

    Plaintiff,

vs.

FREIGHTHUB, INC.,

    Defendant,

and

FREIGHTHUB, INC.,

    Counterclaim Plaintiff,

vs.

BG STRATEGIC ADVISORS, LLC;
BGSA HOLDINGS, LLC; and
BENJAMIN H. GORDON,

    Counterclaim Defendants.
_____/

**BGSA PARTIES' MOTION FOR SPOLIATION SANCTIONS**

Plaintiff and Counterclaim Defendant BG Strategic Advisors, LLC ("BGSA") and Counterclaim Defendants BGSA Holdings, LLC ("BGSA Holdings") and Benjamin Gordon ("Gordon") (collectively, the "BGSA Parties"), by and through the undersigned counsel of record, and, pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent power to manage the case before it,[1] respectfully request that this Court enter an Order allowing a permissive adverse

---

[1] This Motion is being filed in accordance with the Court's Order Setting Discovery Procedure. (D.E. 43.) The BGSA Parties believe that this Motion falls within the scope of that Order. If this belief is in error and the Court will require *full briefing* (in excess of the five pages allowed for a discovery motion), the BGSA Parties would respectfully request that the Court permit the BGSA Parties the opportunity to supplement this Motion with full briefing.

1

inference to be drawn from the spoliated evidence against Defendant/Counterclaim Plaintiff, FreightHub, Inc. ("FreightHub"). In support thereof, the BGSA Parties state as follows:

### BRIEF INTRODUCTION

This case is simple. FreightHub hired BGSA to advise FreightHub on mergers and acquisitions. The Parties then entered into an Agreement, and BGSA performed thereunder. Now, FreightHub does not want to pay the agreed-to fees. Throughout discovery, the BGSA Parties have uncovered the real reason that FreightHub refused to perform under the Engagement Letter: FreightHub found a new advisor and wanted to push the BGSA Parties out of the picture. In the process, FreightHub's former Chairman of the Board has admitted[2] that FreightHub consulted corporate counsel and that corporate counsel essentially advised FreightHub to lock BGSA out of involvement with FreightHub in order to claim that FreightHub had a legal basis to attempt to terminate the Agreement. In addition, those emails that were produced were heavily redacted— with FreightHub and ATW (somehow) seemingly claiming a joint defense privilege.

The Federal Rules of Civil Procedure impose a clear directive regarding the duty to preserve evidence. FreightHub's failure to adhere to its duty has significantly prejudiced the BGSA Parties, as has become clear from FreightHub's arguments throughout the cross-Motions for Summary Judgment.[3]

---

[2] This testimony was offered without counsel for the BGSA attempting to invade any privilege that may have protected it. Mr. Gonzalez volunteered this information, and neither Mr. Gonzalez's counsel (who is also FreightHub's counsel) *nor* FreightHub's counsel asserted a privilege objection.

[3] The Court may question why this Motion is being made at this stage. Candidly, the BGSA Parties wanted to see if FreightHub would attempt to make claims that *there is no evidence* of certain things—*i.e.*, attempting to use the spoliation as a sword of its own—which would necessitate the BGSA Parties to inform the Court of the spoliation as a shield of its own. FreightHub's intent was undoubtedly revealed in its Motion for Summary Judgment. (D.E. 137, 138.) This was confirmed in FreightHub's Opposition (D.E. 142, 144) to the BGSA Parties' own Motion for Summary Judgment.

### THE CRUX OF THE SPOLIATION

Edmundo Gonzalez was a founder of FreightHub and served as the Chairman of the Board of FreightHub at all times relevant to this lawsuit—from founding until September 2020. Mr. Gonzalez decided that an extra email address under the FreightHub umbrella—and domain—was one too many for him, and decided to use what was essentially a personal email—though, it turned out to be under the domain of another of his businesses. This meant that FreightHub did not have the originals of any of Gonzalez's emails—sent or received. For a large part of the time period at issue, this is not a huge problem, as FreightHub's then-Chief Executive Officer (Ohad Axelrod) was also copied on the emails, meaning that FreightHub had a copy. For the remainder of the time, however, FreightHub has failed or refused to produce any additional emails to or from Gonzalez—even though they undoubtedly exist. This has directly prejudiced the BGSA Parties.

### THE EMAILS EXISTED

As an initial matter, it is clear that evidence existed at one time and that there was a duty to preserve—and produce—this evidence. It is undisputed that Mr. Gonzalez used his Selway email address and that no emails from this domain were produced. Thus, while the number of relevant emails is not known, it is clear that there at least *some* relevant emails.

As this Court has become aware through the litigation, FreightHub attempted to terminate the relationship with BGSA at least as early as September 2018. Crucially, that effort was done with the advice of counsel—with counsel effectively saying that if FreightHub could ensure that BGSA was not "involved," FreightHub could make an argument that the termination was justified. Given this, FreightHub clearly knew that its own efforts would likely result in litigation, and, yet, Mr. Gonzalez did not maintain his own communications.

### BGSA MADE NUMEROUS ATTEMPTS TO OBTAIN THE EMAILS

Throughout the pendency of this action, the BGSA Parties have done everything in their power to obtain the relevant documents from FreightHub while simultaneously complying with this Court's discovery orders. Despite their best efforts, however, the BGSA Parties have been stonewalled at every turn—all because of FreightHub's actions. In fact, in response to FreightHub's Motion for Partial Summary Judgment—where FreightHub claimed that BGSA Parties can show no evidence for their position—undersigned counsel Mr. Ludens submitted a Federal Rule of Civil Procedure 56(d) Declaration (the "Declaration") outlining the BGSA Parties' efforts to obtain the documents. (D.E. 146.) A true and correct copy of the Declaration is attached hereto as **Exhibit 1**. As referenced therein, first, BGSA issued a set of requests for production to FreightHub. (D.E. 146 ¶ 8). When the BGSA Parties realized that there may be additional emails out there, the BGSA Parties deposed Mr. Gonzalez, Selway, and ATW and requested documents from each of them. (D.E. 146 ¶¶ 16, 18, 20, 22, 29, 31, 33, 34). And lastly, after no documents were provided by Mr. Gonzalez, Selway, or ATW (D.E. 146 ¶¶ 21, 25, 39), undersigned counsel emailed FreightHub outlining his concerns that *no* responsive emails had been located (D.E. 146-13). To date, no additional emails have been received.

### ONLY SOME OF THE EMAILS EXIST

Because of Mr. Gonzalez's failure to maintain his own communications, the only evidence related to Mr. Gonzalez—and his participation in the events relevant to this lawsuit—that the BGSA Parties have been provided are those communications to which Axelrod is copied—or those which were sent to outside counsel for FreightHub. There are undoubtedly additional communications which the BGSA Parties were not provided. Stated simply, despite Mr. Gonzalez's active participation in managing FreightHub and directing the termination of

BGSA, FreightHub did not maintain any of these communications other than through Mr. Axelrod's copy. As FreightHub clearly knew that its attempted termination of BGSA would likely result in litigation, FreightHub was under a duty to preserve Mr. Gonzalez's emails as of then (at the very least). Its failure to do so has not only undermined the legal system but has also prejudiced the BGSA Parties.

This prejudice is evidenced in FreightHub's own Motion for Partial Summary Judgment (D.E. 137, 138) and Opposition (D.E. 142, 144) to the BGSA Parties' Motion for Partial Summary Judgment, where FreightHub has attempted to argue that many things are undisputed or that no evidence exists, despite the fact that FreightHub failed to maintain any documents or communications of its own Chairman during the relevant time period. Accordingly, the BGSA Parties have been prejudiced by FreightHub's actions.

## CONCLUSION

FreightHub spoliated critical evidence in this case. FreightHub's tactics and loss or destruction of evidence has resulted in irreparable harm to the BGSA Parties. As such, the BGSA Parties are entitled to a permissive adverse inference to be drawn from such evidence.

WHEREFORE, Plaintiff and Counterclaim Defendant BG Strategic Advisors, LLC and Counterclaim Defendants BGSA Holdings, LLC and Benjamin Gordon respectfully request that this Court enter an Order allowing an adverse inference to be drawn from the spoliated evidence and all further relief this Court deems just and proper.[4]

---

[4] Acknowledging that this is a bench trial, the BGSA Parties recognize that the Court may decline to make such a finding at this time. However, given the positions taken by FreightHub in the briefing on the cross-Motions for Summary Judgment, it is clear that FreightHub will attempt to argue that *no* evidence exists as to certain things. As such, to preserve their rights, the BGSA Parties are forced to make this Motion for the record.

## CERTIFICATE OF CONFERRAL

The undersigned hereby certifies that it made numerous conferral attempts before filing this Motion. The undersigned first conferred via email on January 18, 2023. (D.E. 146-13). Counsel for the Parties then engaged in numerous Zoom conversations and telephone conferences regarding the dispute referenced herein. Finally, the undersigned made one last attempt to confer via email on June 16, 2023. Despite numerous good faith electronic and live conversations in an attempt to arrive at a mutually acceptable resolution without Court intervention, the Parties were unable to resolve the dispute, and FreightHub has indicated an opposition to this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the Court's CM/ECF system this 7th day of July, 2023, which generated notices of electronic filing on all counsel of record.

Dated: July 7, 2023                    Respectfully submitted,

        ZEBERSKY PAYNE SHAW LEWENZ, LLP
        110 S.E. 6th Street, Suite 2900
        Fort Lauderdale, FL 33301
        Telephone: (954) 989-6333
        Facsimile: (954) 989-7781
        Email: jshaw@zpllp.com; zludens@zpllp.com; lpalen@zpllp.com; mlomastro@zpllp.com

        By: /s/ Zachary D. Ludens
           Jordan A. Shaw, Esq.
           Florida Bar No.: 111771
           Zachary D. Ludens, Esq.
           Florida Bar No.: 111620
           Lauren N. Palen, Esq.
           Florida Bar No.: 1038877

        *Counsel for Plaintiff BG Strategic Advisors, LLC and Counter-Defendants*